CONTINUATION OF A CRIMINAL COMPLAINT AND
APPLICATION FOR ARREST WARRANTS

I, Jeremiah Gauthier, being first duly sworn, hereby depose and state as follows:

INTRODUCTION AND AGENT BACKGROUND

1. I am a Task Force Officer (TFO) with the United States Drug Enforcement Administration (DEA) and have been so employed since December 2024. I previously served as a DEA TFO from 2017 to 2023. I am an "investigative or law enforcement officer" within the meaning of Section 2510(7) of Title 18, United States Code; that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516. I am currently assigned to the Kalamazoo Post of Duty, Grand Rapids District Office in the DEA's Detroit Field Division. I have approximately 19 years total of law enforcement experience. I have participated in investigations that include the interception of wire and electronic communications. Specifically, *United States v. Raymond Demetrius Stovall, et al.*, No. 1:18-cr-00251 (W.D. Mich.), among others, and the conviction of twenty-four (24) drug traffickers involved in an interstate crystal methamphetamine conspiracy. I have been involved in the investigation of various individuals and organizations involved in the manufacturing, distribution, and use of controlled substances. I was assigned as a narcotics detective with the Michigan State Police Southwest Enforcement Team (SWET) from March 2014 to March of 2023. During that time, I conducted undercover purchases of controlled substances, firearms, and automatic firearm devices

otherwise known as switches. I also managed confidential informants, was involved in surveillance of narcotics dealers, and was involved in the planning and execution of search warrants. During my prior tenure as a DEA TFO, I assisted in drafting and executing federal search warrants, investigating wire-tap investigations involving large drug transnational trafficking organizations and conducting surveillance and controlled purchases of drugs. I am also currently a lieutenant with the Berrien County Sheriff's Office assigned as a field supervisor to MSP SWET since April 2024.

2. I have conducted surveillance operations and have become familiar with the methods used by individuals engaged in the manufacturing, trafficking, and use of controlled substances. I received specialized training at the DEA Training Academy in Quantico, Virginia regarding the identification of narcotic substances and the operation of drug trafficking organizations. I have written and conducted numerous search warrants which have resulted in the seizure of large amounts of narcotics and narcotics proceeds.

3. I also have received specialized training at the Michigan State Police Academy in the field of narcotics, including items such as the use, possession, paraphernalia, sales, packaging and production of controlled substances. I have completed over 80 hours of formalized narcotic law enforcement education/training including certified instruction, police sponsored in-service training, mentoring by senior officers on drug related investigations and attendance at a 40-hour narcotic investigators course.

4. I have also been involved in investigations of numerous individuals and organizations involved in the manufacturing, distribution, and use of controlled substances. During my prior tenure with DEA as a TFO, I also worked in an undercover capacity for the purpose of purchasing and/or delivering controlled substances; and have participated in the preparation of affidavits in support of numerous search and arrest warrants for violations of federal drug laws contained in Title 21, United States Code, as well as in the execution of the same. In addition, I have on numerous occasions, as a TFO with DEA, made seizures of contraband, conveyances, currency, drug paraphernalia, and firearms possessed or used in relation to violations of Title 21, United States Code, Section 841. I have successfully conducted numerous investigations that have resulted in the arrest of numerous drug traffickers and the seizure of significant quantities of drugs and drug-related proceeds. I have further conducted surveillance operations of drug traffickers and have interviewed numerous people personally involved in drug trafficking. I have also supervised numerous confidential sources during controlled purchases of narcotics. Through this training and experience, I have become familiar with, and have gained a thorough understanding of the methods, manners and means used by individuals engaged in unlawful manufacturing, trafficking, and use of controlled substances. As part of my duties, I investigate criminal violations of the federal drug trafficking laws. I have been involved with various electronic surveillance methods, the debriefing of defendants, informants, and witnesses, as well as others who have knowledge of the distribution, transportation, storage, and importation of controlled substances. I

have participated in investigations that have led to the issuance of search warrants involving violations of drug laws. These warrants involved searches of locations and devices, including but not limited to residences of targets, their associates, and relatives; storage facilities; smartphones; and computers. Evidence searched for, and recovered, in these locations has included controlled substances, records pertaining to the expenditures and profits realized from the distribution of controlled substances, monetary instruments, and various assets that were purchased with the proceeds of drug trafficking.

     5.     I am personally involved in the investigation of the offenses referred to below. In addition to my personal knowledge, the statements contained in this continuation are based in part on:

    a.    information provided by Special Agents with the DEA / FBI / HSI, and state, and local law enforcement officers with the Michigan State Police (MSP), MSP-sponsored multijurisdictional drug enforcement teams (MSP SWET) as well as other law enforcement officials, including oral and written reports that I have received directly or indirectly from DEA and other law enforcement officials;

    b.    interviews by investigators with confidential sources and cooperating witnesses;

    c.    results of physical and technical surveillance conducted by law enforcement officers, which have been reported to me;

    d.    a review and analysis by other law enforcement officers and law enforcement analysts of telephone toll records and subscriber information, which has been communicated to me;

    e.    telephone calls and messages that were consensually recorded in the course of the investigation, the contents of which I have reviewed or have been reported to me;

    f.    phone location information; and

    g.    my training and experience as a DEA TFO; and the training and experience of other special agents and other law enforcement officers with whom I have spoken regarding this investigation, or whose reports I have reviewed.

6.    Because this continuation is for the limited purpose of establishing probable cause to support the criminal complaint and the issuance of arrest warrants against the proposed defendants, MICHAEL DEANGLO SCOTT a/k/a "Binky" (DEANGLO) and MICHAEL DEVONTAE SCOTT a/k/a "Bighead" (DEVONTAE), it contains only a summary of relevant facts. I have not included each fact known to me concerning the entities, individuals, and events described in this continuation.

7.    Based on the facts set forth in this Continuation, there is probable cause to believe that DEANGLO and DEVONTAE committed the offenses of conspiracy to distribute and possess with intent to distribute 50 grams or more of methamphetamine, a Schedule II controlled substance, and attempted possession with intent to distribute 50 grams or more of methamphetamine, a Schedule II

controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(viii), 846.

## PROBABLE CAUSE

8. In October 2024, investigators with the Michigan State Police (MSP) Southwest Enforcement Team (SWET) West began investigating MICHAEL DEANGLO SCOTT a/k/a "Binky" (DEANGLO) and MICHAEL DEVONTAE SCOTT (DEVONTAE) for distributing methamphetamine and fentanyl in the Benton Harbor, Michigan area. DEANGLO and DEVONTAE were identified as retail level dealers of methamphetamine within the Western District of Michigan. Investigators have identified INDIVIDUAL A as a source of supply of methamphetamine who resides in the Long Beach, California area who has been coordinating shipments of methamphetamine from California to the Western District of Michigan.

9. DEANGLO has the following criminal convictions:

    a. Convicted of Misdemeanor Possession of Marijuana in Berrien County, Michigan on 03/23/2012.

    b. Convicted of Felony Delivery / Manufacturing of Cocaine, Heroin or Another Narcotic <50 grams in Berrien County, Michigan on 07/07/2017.

    c. Two additional convictions for Driving while Suspended / Revoked were noted in 2016 and 2017 in Berrien County, Michigan

10. DEVONTAE has no criminal convictions.

### A. DEANGLO Flees Traffic Stop with FedEx Parcel

11.     DEANGLO was driving an Enterprise Rental Company owned 2024 Jeep Wagoneer bearing Ohio registration KIH3437.  Pursuant to a State of Michigan search warrant, investigators installed a GPS tracking device on the 2024 Jeep Wagoneer.    Based on my training and experience, I know that drug traffickers often use rental vehicles to avoid law enforcement detection. Investigators analyzed the tracking data from the GPS tracking device and learned DEANGLO mostly stayed in the Benton Harbor area.   On May 7, 2025, Investigators were monitoring the electronic tracker and observed the Jeep Wagoneer traveling eastbound on I-94 near Hartford, Michigan.  Investigators then watched as the vehicle traveled northbound on County Road 681 in Van Buren County towards Bangor, Michigan.

12.     A  Drug  Enforcement  Administration  (DEA)  investigator  contacted FedEx and asked if a package was being delivered to Bangor, Michigan on May 7, 2025.  FedEx advised that an approximately 22-pound package was delivered to an address  on  East  Cass  Street,  Bangor,  Michigan  on  that  date.   FedEx  advised investigators that the package was sent via FedEx Express 2-Day delivery from Hawthorne, California on May 6, 2026.   The shipper / return address was "KSP Fulfillment"  located  in  Minneapolis,  Minnesota.    Investigators  also  learned  the recipient name on the package was "Kelly Hansley."  Investigators determined no subject by the name of "Kelly Hansley" had ever been associated to the residence on East Cass Street. Additionally, no subject by that name was associated to the area of Bangor, Michigan per Michigan Secretary of State database.  I knew, based on my

7

training and experience, that this package had characteristics consistent with sending drugs, such as being sent from a fictitious sender, sent to a fictitious recipient, and sent from a known source of supply area (southern California). I further knew that drug traffickers sometimes use fraudulent return labels to make a drug package appear as if it is shipped from a non-border state in an attempt to avoid detection by law enforcement.

13. On May 7, 2025, GPS tracking information showed DEANGLO's Wagoneer made a brief one-minute stop near the residence on East Cass Street. The Wagoneer then traveled westbound on 30th Avenue in Van Buren County towards I-196. Investigators established physical surveillance on the Wagoneer on southbound I-196 near the Van Buren / Berrien County line. Physical surveillance was continued, and investigators followed the Wagoneer to the Walmart in Benton Harbor, Michigan. DEANGLO was identified by investigators exiting the driver's seat and going into Walmart. No one else was in the vehicle. Shortly thereafter, DEANGLO left Walmart, got into the Wagoneer, and drove away.

14. An MSP Trooper was in the area and attempted to make a traffic stop on the Jeep Wagoneer for failing to stop at a stop sign. However, after briefly stopping, DEANGLO then fled the traffic stop, drove to his residence on Pavone Street, and was observed on a doorbell camera nearby removing a large box from his vehicle and bringing it into Pavone Street. DEANGLO was interviewed and admitted to fleeing the traffic stop because he "was scared." Based on my training, experience, and familiarity with the investigation, I believe DEANGLO obtained the Fed-Ex

8

package from the residence on East Cass Street containing controlled substances and fled from the traffic stop in order to avoid criminal liability. This belief is based on DEANGLO's flight from law enforcement, the same circumstances surrounding a methamphetamine seizure from DEANGLO at the same residence on East Cass Street detailed below on July 9, and similarities between this FedEx parcel and other FedEx parcels believed to contain methamphetamine.

15. Homeland Security Investigation (HSI) Special Agent (SA) Doug Kujacznski issued a subpoena to FedEx to identify parcels previously shipped to East Cass Street. The information received revealed that, in addition to the May 7 parcel, two other parcels had also sent from Hawthorne, California to the same residence on East Cass Street since January 2025. The information revealed the parcels were similar in size with different return addresses from Midwest states despite actually being sent from Hawthorne, California. Additionally, the recipient names for all three parcels was "Kelly Hansley." Based on my training, experience, and familiarity with the investigation, I believe all three parcels contained methamphetamine.

**B. DEANGLO and DEVONTAE Attempt to Obtain Up 20-Pound Methamphetamine Parcel**

16. On July 9, 2025, investigators confirmed with FedEx that a 23-pound package shipped out of Hawthorne, CA was out for delivery to the same address on East Bangor Street in Bangor, Michigan. Investigators initiated surveillance at the residence and observed the FedEx package delivered to the doorstep around 5:30 p.m. At approximately, 11:25 p.m., DEANGLO and DEVONTAE arrived at the residence East Cass Street and exited their respective vehicles. They were detained and the

FedEx box was seized and searched pursuant to a state of Michigan search warrant. The box, which appeared to be shipped from "Howard Equipment" in Shelley, ID and addressed to "Kelly Hansley," the same fictitious recipient of the prior parcels, contained four vacuum-sealed bags containing a white crystalline substance, which later lab tested as approximately 8.92 kilograms of 97% pure methamphetamine.

17.     On July 9, a blue iPhone seized from DEANGLO and a white iPhone seized from DEVONTAE were both searched pursuant to a federal search warrant (case # 1:25-mj-507). The phones contained an iMessage conversation between DEANGLO, using (269) 392-3445, DEVONTAE, using (765) 603-9599, and INDIVIDUAL A. On July 9, 2025, at approximately 9:25 a.m., INDIVIDUAL A sent the SCOTTs a box truck emoji. Then, at approximately 3:15 p.m., INDIVIDUAL A sent "8826 1522 6544," which matched the tracking number for the FedEx package delivered to the residence at East Cass Street on that day containing the 8.92 kilograms of methamphetamine.

18.     Based on my training, experience, and knowledge of the investigation, I believe INDIVIDUAL A was the source of supply for the methamphetamine seized on July 9, 2025. When he initially sent the truck emoji, I believe INDIVIDUAL A was communicating that the package was out for delivery that day. He then also sent the tracking number for the package for the SCOTTs to receive information from FedEx about the package.

19. Investigators also identified a relevant conversation between DEVONTAE, using (765) 603-9599, and DEANGLO, using (312) 989-6706: [1]

20. Below is a portion of that conversation from January 25, 2025:

| | |
|---|---|
| DEANGLO: | Wya they here |
| DEVONTAE: | Colfax how many 1 |
| DEANGLO: | Yea |
| DEVONTAE: | Have them pull up over here |
| DEANGLO: | Give them 2 |
| DEVONTAE: | Bet |
| DEANGLO: | Outside dude |
| DEVONTAE: | Bet |

21. Based on my training, experience, and knowledge of the investigation, I understand that DEANGLO was requesting and receiving assistance from DEVONTAE to sell a quantity of drugs to a third party. DEANGLO initially wanted to know where DEVONTAE was located ("Wya" or "where you at?") and informed him the drug customers were in town to purchase the drugs ("they here"). DEVONTAE provided his location ("Colfax," an avenue in Benton Harbor) and asked how much drugs the customers wanted ("how many 1"). DEANGLO initially confirmed that they wanted 1, but then changed that to 2. DEVONTAE acknowledged he understood

---

[1] A black Apple iPhone assigned calling number (312) 989-6706 was also seized from DEANGLO on July 9, 2025.

("Bet") and then DEANGLO informed DEVONTAE that the customers were outside his location.

## CONCLUSION

22. Based on the foregoing, I respectfully submit there is probable cause to believe that: MICHAEL DEANGLO SCOTT a/k/a "Binky" (DEANGLO) and MICHAEL DEVONTAE SCOTT a/k/a "Bighead" (DEVONTAE) have conspired with each other and others to distribute and possess with intent to distribute 50 grams or more of methamphetamine, a Schedule II controlled substance, and have attempted to possess, with intent to distribute, 50 grams or more of methamphetamine, a Schedule II controlled substance

23. Finally, I request that the Court order all documents in support of this complaint and these applications, be sealed until further ordered by the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize the investigation.